The next case today is Jacqueline Barbosa v. Midland Credit Mgmt., Inc. et al., Appeal No. 19-1896. Good morning, Your Honors. Charles Delbaum for the Plaintiff, Jacqueline Barbosa. I'd like to reserve three minutes for rebuttal, if I may. You may. Thank you, Your Honor. I'm going to address three points that were not fully developed in our briefing, as they might have been. The first is about the language in the Barclays cardholder agreement. The second is on equitable estoppel, and the last is on delegation. On the language, the core question in this case is whether the non-signatory defendants, MCM and Schreiber Law, have the contractual right to force Ms. Barbosa to arbitrate. Both of the defendants are debt collector service providers to Midland Funding, and Midland Funding is the assignee of Barclays. The arbitration provision states that Barclays service providers are covered by the arbitration clause if, and only if, they are included in litigation with Barclays. Therefore, even if Midland Funding now stands in the shoes of Barclays for every purpose under the sun, which we deny, defendants would only be entitled to invoke arbitration if they were included in litigation with Midland Funding. But as the court knows, Midland Funding isn't a defendant in this case. These defendants, Schreiber Law and MCM, are twice removed from any relationship with Barclays. Counsel, excuse me. In making the argument that you just made, do you rely on specific language in the arbitration clause? And to be specific, I mean, there is this language. And to the extent included in a proceeding in which Barclays is a party of service providers and marketing partners, in making the argument that you're now making, is that the language that you rely upon to make that point? Yes, it is, Your Honor. So if the and was an or, would you have a different construction? I'm sorry, did you have a question? I think the result would still be the same, in that we spent a great deal of time parsing particular words in this agreement. But I think the intent is clear. The intent is that Barclays is attempting to protect itself and those who are in direct relationship with it from having to be in court. Barclays wants to be able to use arbitration and it wants to protect those who are in a direct relationship with it, whether that is its employees, its agents, its assigns. Aren't these defendants the service providers? They are service providers to the AFSCENE, Midland Funding. And therefore, even if Midland Funding stood in the shoes of Barclays, that would not entitle its service providers to invoke arbitration, unless we had also sued Midland Funding. If Barclays had asked parties that are comparable to Midland Credit Management and the attorneys in this case had asked them to pursue their claims, Barclays clearly could have done that. Those parties could have invoked the arbitration clause. Is that not correct? If Barclays had asked them to do it on its behalf, is that correct? Yes, Your Honor, that is correct. Okay, well if, and I guess this is the district court's point, if Midland Funding is in exactly the same position that Barclays, in Barclays' shoes, as the district court put it, why can't Midland Funding then do exactly what Barclays could have done? Ask Midland Credit Management and the lawyers in turn on behalf of Midland Credit Management to invoke the arbitration clause? They could if Midland Funding had also been included in the litigation. Three minutes remaining. And that goes back to the clause that we've been focusing upon, is that correct? Yes, Your Honor. And doesn't, as I read this clause, the only arbitration, if Barbosa brings a claim against the other, who would appear to be Barclays, or the assigns of the other, who would appear not to be the defendant in this case? Yes, Your Honor. If I may proceed to another point, with the court's permission, this same clause negates the possibility that MCM and Shriver Law were intended third-party beneficiaries. Under Delaware Law, there has to be a material purpose to protect the third party under the contract, and clearly this contract did not intend to protect third-party debt collectors for an It could easily have had more broad language, like the language in the Montalbano case that's discussed in the briefing, which referred to- Mr. Court doesn't say a word in its decision about this third-party beneficiary theory, and the point is made, and I think it's correct, that you're making that for the first time on appeal. Is that correct? Not exactly, Your Honor. We believe that the two issues merge together, in that the only way that MCM or Shriver Law could be entitled to invoke this arbitration clause would be as third-party beneficiaries, because they're not covered by the specific language, and so we're just anticipating their contention that even if this specific language, which again, unlike Montalbano, says assinees, not assinees of assinees, not agents of assinees, that this language nevertheless gives them rights as third-party beneficiaries. We're merely acting defensively. Any additional questions? You've got another hurdle to get over, right? You've got the who decides this issue we're talking about. Yes, Your Honor. I'd love to address those, but I seem to be out of time. Do you want to spend a minute addressing it? Spend a minute addressing it. Thank you, Your Honor. Two very quick points. On equitable estoppel, I want to highlight that under the Kuroda decision of Delaware, the signatory must rely on the terms of the written agreement in order for the non-signatory to be able to invoke arbitration. We do not rely on the terms of the written agreement. We have a completely separate theory under which MCM and Shriver law violated the FDCPA because of Massachusetts law that applies regardless of any term in the contract. It applies because Barclays was incorporated and maintained its place of business in Delaware. I'm sorry to interrupt you, Counselor, but I think Judge Kayada wanted a different question addressed. Is that correct, Judge Kayada? Before you get to equitable estoppel, you've got to get around the clause in the agreement that says that claims regarding the applicability of the arbitration clause will be resolved exclusively and finally by binding arbitration under the rules of the AAA. Thank you, Your Honor. Three points on that. This Court's Apollo decision, of course, is instructive, but it's not controlling. First, this is a consumer arbitration agreement, and where there is an ambiguity, which there is here, there is an ambiguity. The consumer is entitled to the benefit of the doubt. The ambiguity here is that the second sentence of the arbitration provision says that the rules of the administrator will be selected at the time the claim is filed. That makes it seem like there are a number of possible rules that will be selected and not necessarily the AAA rules. Under this Court's decision in Marie v. Allied Home Mortgage, where there is a reference to a set of rules that follows a discussion of the types of claims that are subject to arbitration, the placement signals that the rules will apply to questions about which claims are subject to arbitration, not the question of who will decide whether there will be arbitration. I hope that answers the Court's question. Thank you, Counselor. Thank you, Your Honors. At this time, if you would mute, Attorney Delbaum, and we would like to hear from Attorney Eichorn. May it please the Court, Corey Eichorn on behalf of Midland Credit Management, Inc. Just to jump in to Judge Cayada's question, Mr. Delbaum, relative to the gateway issue, Judge Thompson recently authored an opinion biller that was decided after the briefing in this matter, Biller v. S. H. Opko, 961 Fed 3rd 502, that describes the framework for gateway issues that an arbitrator should decide, and this case fits nicely within that framework. First of all, as far as I can tell, the plaintiff appellant is conceding that Midland funding as an assignee would have the right to compel arbitration in this case. The arbitration provision itself says that the applicability of the provision should be determined by an arbitrator, and the provision incorporates the rules of the AAA, which also provide that the arbitrator can determine the enforceability and the validity of an arbitration agreement. They go on to say that Midland isn't involved in this litigation, and that makes a difference. Your Honor, I think that's disingenuous when you look at the complaint in the case. You know, this entire case arises out of the filing of lawsuits by Midland funding, and throughout, the complaint is replete with references to Midland funding and Midland credit management relationship with Midland funding as a servicer, as an agent, and even makes an allegation that Midland credit management directs the filing of the lawsuit by Midland funding. So, based on the allegations of the complaint, Midland funding and Midland credit management are almost one and the same. So, on this gateway, I'm sorry, go ahead and ask a question. Just very quickly. Why don't you pursue the gateway question? I have a different question. Please go ahead, Judge Cato. Sure. On this gateway question, I take it there's agreement that you've got to establish there's a that you have to satisfy, and so I look at the term applicability of the arbitration clause. Does applicability mean the types of claims to which it applies? What does it mean the parties who are bound? Your Honor, given the record in this case, and again, the fact that they've admitted and or conceded that Midland funding as an assignee could compel arbitration, that phrase applicability of the arbitration provision would mean the arbitrator should determine whether Midland credit management falls within the scope of that arbitration provision. I'm not sure how you preface. We're supposed to start with the text of the agreement and ask whether it's clear, and I see applicability, and it seems to me ambiguous as to whether it means what agreements it applies to or who is bound, and then I find it comes in a long list of types of claims that it applies to. Doesn't that create at least a lack of sufficient clarity under Haslam and Greentree that you've got a problem? Not in my reading of Haslam and Greentree, Your Honor. I think applicability has been construed in other cases to mean the parties to the agreement. I think if you look at Apollo, the language in that case was, I believe, validity of the arbitration agreement. Applicability and validity are very similar in the way that they operate, and particularly in light of the record in this case, which is, again, Midland funding the plaintiffs have admitted can compel arbitration. All the arbitrator would need to decide is does Midland credit management fall in the ambit of that agreement. But is Midland a necessary party? Not in my mind, Your Honor. You know, based on the well-settled principles that an assignee steps into the shoes of an assignor, and as set forth in our brief, in the McKenzie versus Flagstar case, this Court has recognized that an assignee steps into the shoes of an assignor and acquires all the rights of the assignor. Midland funding is not necessary to be a party here. I know there was some discussion regarding the service provider language, but in my mind, that really doesn't come into play here, because if you look at the sentence before that, it talks about the arbitration provision applying to any assigns or agents of Barclays, and if Midland funding is stepping into the shoes of Barclays, then the arbitration provision would apply to Midland credit management, which the plaintiff has asserted is an agent and affiliate of Midland funding. Counsel, my question does go to the scope of the arbitration provision, and this language that the appellant focused upon in his argument. I'm referring to, and to the extent included in a proceeding in which Barclays is a party that service providers and marketing partners, sort of acknowledging that Midland's funding would stand in the shoes of Barclay. They seem to acknowledge that, but they point out that Midland funding is not a party to this action, and hence, that would suggest that the scope of the arbitration provision does not apply to the parties in this litigation who are invoking the arbitration clause. That argument was raised in the opening brief. You didn't even respond to that argument in your entering brief, I think. It seems to me an important argument. How do you respond to that here? Well, Your Honor, again, I don't believe that provision comes into play here because we fall under the first provision of that sentence, which talks about, for purposes of this provision, you includes any authorized user on the account and any of your agents, beneficiaries, or assigns, and we or us includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents, and assigns. Doesn't that phrase, and to the extent included, doesn't that modify everything that precedes the comma? Limits. Doesn't that limit? Not in my mind, Your Honor. It does not limit the applicability of that if you read it within the context of the agreement. If Barclays is named as a party, my reading is that it could apply to its service providers and marketing partners that are not assigns, agents, and beneficiaries. But if Barclays is not named as a party, which in this case would be Midland Funding, then it could apply to assigns, agents, beneficiaries, etc. That's how I read, and that's how other courts, I believe, have interpreted that provision. Well, I think our question suggests there's certainly an ambiguity created here, and that doesn't help your position that there's an ambiguity, right? I don't believe there's an ambiguity, Your Honor, in the way that I'm reading this provision. Might I ask you a question? I asked your opposing counsel, and that is, it seems to me this arbitration clause, if we go to the very first sentence, it only applies to claims by you or us against the other or against assigns of the other. The arbitration agreement doesn't seem to apply to claims against assigns of the assigns of the other, and it seems to me that your client here, MCM, is not an assign of the other, but is an assign of one of the other's assigns. In other words, Barclays is the other. There's no definition for other like there is for we or us. Other simply means Barclays here. So, tell me what's wrong with that thinking? Well, Your Honor, I think the sentences below that provision modify the language in that first sentence, but even if you take, you know, the reasoning that Your Honor is taking with respect to that other language, there's evidence in the record of portfolio-level affidavit of sale from Barclays that states that, pursuant to the sale, Barclays is selling, transferring, assigning the account to Midland Funding and its successors and assigns. So, Midland Funding, that fits that language perfectly. So, Barclays. So, Midland Funding would be covered by this arbitration agreement. Correct. But as I understand it, we're concerned with MCM, not Midland Funding, and MCM is not an assign of Barclays. It's not an assign of the other. It's an assign of the other's assign. Your Honor, I don't believe that's correct. As I just indicated, the portfolio-level affidavit of sale from Barclays indicates the account is assigned not only to Midland Funding, but to Midland Funding's assigns, and Midland Credit Management is an assign for collection of Midland Funding. So, there is a direct relationship between Barclays and Midland Credit Management. Okay. So, could you read that clause again and give us the And it's in the underlying docket at 27-2 at page 14, and it states that pursuant to the sale, Barclays sold, transferred, and assigned the account to Midland Funding and its successors and assigns. Thank you. And that's pointed out in our brief as well. Any additional questions? Thank you, Counselor. Thank you. Attorney DeLinks, if you could present, and Attorney Eichhorn, if you could mute. Thank you so much. Good afternoon. May it please the Court, Marissa DeLinks on behalf of regard to the second part of the arbitration provision, which has the language that Attorney DelDom has focused on today in his argument, which is, and to the extent, included in a proceeding in which Barclays is a party, its service providers, and marketing partners. I think my position is, Your Honor, that that is a limited extension of the arbitration provision because the immediate sentence defines who us would be. In this instance, there's no dispute. Midland Funding is the assignee of Barclays, so it takes the place in the us of Barclays, so it would be Midland Funding, including its employees, parents, subsidiaries, affiliates, beneficiaries, agents, and assigns. And then what's not included in there is this limited extension. Service providers and marketing partners would not be agents or assigned of Midland Funding, and therefore, the language, and to the extent included in a proceeding in which Midland Funding is a party, there's the extension to its service providers and marketing partners. That sentence does not apply to my client, Schreiber Cohen, because Schreiber Cohen is not a service provider. Schreiber Cohen, as the plaintiff here alleged in its complaint, is sued because it was the attorneys that brought the action against Barbosa on behalf of Midland Funding. So it is the agent, under standard principles of agency law, it is the agent of its principal, which is Midland Funding, and therefore, the first part of the arbitration provision applies to Schreiber Cohen, where it should be read, this provision applies to us, meaning Midland Funding, and its agents and assigns, which is here Schreiber Cohen. Counsel, what is it about service providers or marketing partners that doesn't permit them to be covered by the very broad language that precedes the comma, employees, parents, subsidiaries, affiliates, beneficiaries, agents, and assigns? Why do service providers and marketing partners, despite the breadth of that language, have to be identified as something different? I don't understand that. Well, what I'm unsure, or what's unclear to me about those people, service providers or marketing partners, is the genesis of their relationship with Midland Funding or Barclays. I don't know. That's such general language to me, marketing partners or service providers. I think what Barclays intended to do here is to do just what I said, extend without a clear understanding of who these service providers and marketing partners are, extend the arbitration provision to apply to these folks in a proceeding where they are named. Your position is that, obviously, your client at Midland Credit Management is covered by the language that precedes the comma, and so the clause that we're fussing about just is not implicated by the status of your clients. That is our position, Your Honor, yes. I think that also flows nicely into Judge Cayette's question, which is, does you or us preclude Schreiber-Cohen from invoking the arbitration provision? I think, from what we understand, the plaintiff has acknowledged and admitted that and then Midland Funding is able to invoke the arbitration provision pursuant to that first sentence in the arbitration provision, as well as its agents and assigns, in which case, here, Schreiber-Cohen is the agent and can invoke the arbitration provision. What document in the file shows us that Schreiber-Cohen is an agent or a sign of Midland Funding as opposed to MCM? The plaintiff's complaint, Your Honor. She alleges in the complaint that Schreiber-Cohen brought the lawsuit as the attorneys for Midland Funding. Therefore, it's an admission that Schreiber-Cohen are the attorneys for Midland Funding. Thank you. Thank you, Your Honors. Counsel, Attorney DeLinks, if you could mute your video and audio and we'll hear from rebuttal for three minutes from Attorney Delbaum. Thank you. I'd like to focus on what I think is a key issue that's been addressed in the defense remarks, and that's on this question of the language Judge Kayada also quoted at the very beginning of the agreement. Our position, to make it very clear, is that if the Barclays Agreement had intended to cover assigns of assigns, it could easily have said that. That is what the AFIA cardholder agreement in the Montalbano case said. It said any purchaser and their assigns and agents. This one doesn't say that. It says Barclays. They just pointed to the sales contract, though, that has the language to Midland and their assigns. But my client was not a party to the sales agreement. My client is being forced to arbitration pursuant to a cardholder agreement. No, but their point is different. Their point is different. They're not saying you're a party, that you agreed that they're an assign. I think what their argument is that if you look at the portfolio agreement, MCM is itself an assignee of Barclays because the agreement says we assign it to you and your assigns. So as an assign of Midland funding, they are an assign of Barclays. That's the argument that I heard from your opponent. Well, on that point, and I apologize if I just interrupted you. I didn't mean to. On that point, we addressed in our briefing the difference between an assignment for collection and an assignment with an ownership interest. MCM did not get an assignment with an ownership interest, and therefore they do not have the same rights that an assignee with an ownership interest would have. Barclays could well have benefited additional assignees, but it didn't choose to do that, and we believe the language is restrictive. The same is true for Schreiber-Cohn. The agreement doesn't say the assignee or the agent of an assignee, and Schreiber-Cohn doesn't even have this portfolio agreement to rely on. So certainly as to Schreiber-Cohn, they're at best the agent of an assignee, and the language of this agreement does not cover the agent of an assignee. Counsel, tell me what I'm missing here. You apparently have admitted, acknowledged that Midland's funding, to use again the district court's line, which stands in the shoes of Barclay. It seems clear that Barclay, if it had wanted to have an attorney or an entity comparable to Midland Credit Management pursue claims on its behalf, those entities could have invoked the arbitration clause. So if that's true, why can't Midland funding, standing in the shoes of Barclays, ask parties like Midland Credit Management or these attorneys to pursue claims on its behalf? I don't know why, if Barclays could do it, Midland's funding, standing in the shoes of Barclays, which you have said they do, cannot do the same thing. Thank you for asking that question, Your Honor. I only admitted that Barclays stands in the shoes for most purposes. We tried to make it, I apologize, I didn't mean to interrupt. No, Midland's funding stands in the shoes. Midland funding, sorry. Yes, Midland funding stands in the shoes for most purposes. But what we tried to make clear in our briefing, and I'm sorry if we didn't make it clear enough, it's there though, that it does not stand in the shoes with respect to the question of assignment of arbitration rights because of the specific language regarding we and us and the definition. We cited in our briefing the Delaware case of DCV Holdings, which says that the specific provisions in a contract will override the general provisions or general rules. Here, we have a specific provision that limits who has a right to enforce the arbitration agreement. All right. Thank you. Thank you very much, LaVarge. Thank you. That concludes the arguments in this case. Attorney Delbaum, Attorney Eichorn, and Attorney DeLinks, you should disconnect from the hearing at this time.